```
 1                UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                     WESTERN DIVISION

 4       THE HONORABLE STEPHEN V. WILSON, JUDGE PRESIDING

 5

 6   UNITED STATES OF AMERICA,        )
                                      )
 7                   Plaintiff,       )
                                      )
 8          vs.                       ) NO. CR 00-1220-SVW
                                      )
 9   OZINE BRIDGEFORTH,               )
                                      )
10                                    )
                     Defendant.       )
11   _____)

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                Los Angeles, California

17

18                Re-Sentencing Hearing

19

20              Thursday, March 20, 2008

21

22                          PAT CUNEO, CSR 1600-CRR-CM
                            Official Reporter
23                          Roybal Federal Building
                            255 East Temple Street
24                          Room 181-E
                            Los Angeles, CA  90012
25                          (213) 617-1817
                            grammacuneo@aol.com
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:     THOMAS P. O'BRIEN
                            UNITED STATES ATTORNEY
 3                          BY:  BRIAN R. MICHAEL
                            ASSISTANT UNITED STATES ATTORNEY
 4                          United States Courthouse
                            312 N. Spring Street
 5                          Los Angeles, California 90012
                            (213) 894-0340
 6

 7   FOR THE DEFENDANT:     THOMAS W. KIELTY
                            ATTORNEY AT LAW
 8                          11400 West Olympic Boulevard
                            Suite 200
 9                          Los Angeles, California  90064-1584
                            (310) 393-0515
10                          tomkielty@earthlink.net

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    LOS ANGELES, CALIFORNIA; THURSDAY, MARCH 20, 2008; 1:07 P.M.

 2                              -oOo-

 3             THE CLERK:  Item 1, CR 00-1220-SWV, United States

 4    of America vs. Ozine Bridgeforth.

 5             Counsel, please state your appearances.

 6             MR. MICHAEL:  Good afternoon, Your Honor.

 7    Brian Michael for the government.

 8             MR. KIELTY:  Good afternoon, Your Honor.

 9    Thomas Kielty on behalf of Ozine Bridgeforth.  He's present

10    before the court in custody.

11                   (Pause in the proceedings.)

12             THE COURT:  This is the time for resentencing.  I

13    have reviewed a document entitled Government's Position Re

14    Sentencing of Defendant and the document Government's Filing

15    of Sentencing Agreement.  So apparently the parties have

16    reached some understanding as to what the sentence should

17    be; is that right?

18             MR. MICHAEL:  Yes, Your Honor.  The parties have

19    with one matter that the parties have a dispute.

20             THE COURT:  So if I understand the parties, you

21    agree as to the criminal history?

22             MR. MICHAEL:  Correct.

23             THE COURT:  And they agree he's not a career

24    offender?

25             MR. MICHAEL:  Correct.
```

| | |
|---|---|
| 1 | THE COURT:  And they agree that he should be |
| 2 | sentenced -- to put it a different way, that a proper |
| 3 | sentence under the relevant sentencing analysis, taking into |
| 4 | account the factors in Section 3553, are found in the |
| 5 | guideline analysis, correct? |
| 6 | MR. MICHAEL:  Correct, Your Honor. |
| 7 | THE COURT:  And the government -- the defense |
| 8 | maintains that the offense level should be a 27; is that |
| 9 | right? |
| 10 | MR. MICHAEL:  Correct, Your Honor. |
| 11 | THE COURT:  And you maintain it should be 29 |
| 12 | because of an adjustment for obstruction? |
| 13 | MR. MICHAEL:  Correct, Your Honor. |
| 14 | THE COURT:  What would the sentence be with |
| 15 | levels -- excuse me -- a Criminal History Category of VI and |
| 16 | an offense level of 27? |
| 17 | MR. MICHAEL:  With 27, Your Honor, the low end |
| 18 | which is what the government had agreed to -- |
| 19 | THE COURT:  Yes. |
| 20 | MR. MICHAEL:  -- would be 130 months; and the low |
| 21 | end of 29, the range advocated by the government, and sort |
| 22 | of impliedly advocated by probation, would be 155 months; |
| 23 | and 155 months, the government maintains, is what the |
| 24 | parties initially anticipated; Mr. Bridgeforth would get a |
| 25 | low-end sentence under the plea agreement. |

1          Several years ago Your Honor let him get out of

2   that and, obviously, there was litigation.

3          THE COURT:  But that isn't binding anymore.

4          MR. MICHAEL:  Correct.

5          THE COURT:  Yes, sir.

6          MR. KIELTY:  I think it's 151, Your Honor.

7          MR. MICHAEL:  Correct.  I misspoke, Your Honor.

8   151.

9          THE COURT:  I see.

10         How much time has the defendant served to date?

11         MR. KIELTY:  He went into custody, I believe, in

12   December of 2000.  So approximately seven and a half years

13   actual time.  Short of seven and a half years.

14         THE COURT:  Seven and a half years.  That would be

15   about 90 months or so?

16         MR. KIELTY:  Correct.

17         THE COURT:  So if he got 130 months, he would have

18   another 40 months to go if he had 151?  He would have 60

19   months?

20         MR. MICHAEL:  Approximately, yes, Your Honor.

21         THE COURT:  Let me hear the arguments on the

22   obstruction.

23         MR. MICHAEL:  Your Honor, preliminarily, if I may,

24   the government did file a prior felony Information in this

25   case; and Your Honor made a finding that there was a basis

1    for an enhancement.

2            THE COURT:  Right.

3            MR. MICHAEL:  In light of the sentencing

4    agreement, the government would ask Your Honor to vacate

5    your prior finding.  The government will move to dismiss the

6    prior felony Information; and if Your Honor grants it, there

7    will no longer be a statutory mandatory minimum of 240

8    months that will apply here.

9            THE COURT:  All right.  I'll follow that.

10           MR. KIELTY:  Shall I proceed with my argument

11   first, Your Honor?

12           THE COURT:  Yes.

13           MR. KIELTY:  Do you want Mr. Bridgeforth at the

14   podium as well?

15           THE COURT:  No.

16           MR. MICHAEL:  Your Honor, since the government is

17   advocating the obstruction enhancement, should I first lay

18   the basis for it?

19           THE COURT:  Yes.  Why don't you take the lectern

20   so I can hear you better.

21           MR. MICHAEL:  Yes, I will.

22                   (Pause in the proceedings.)

23           MR. MICHAEL:  Your Honor, as you are aware this

24   case was initially handled by other assistants.

25           THE COURT:  Yes.

1          MR. MICHAEL:  And the original assistant who

2     handled the prior sentencing was AUSA Nancy Kardon who is no

3     longer with the office.  At that time, Your Honor -- and

4     based on pretrial litigation -- Your Honor had made a

5     finding that Mr. Bridgeforth, regarding a proffer agreement

6     that when -- let me start over Your Honor.

7          There was a finding made by Your Honor prior to a

8     trial happening in this case after Mr. Bridgeforth was

9     allowed to get out of his plea agreement regarding his

10    understanding of the proffer; and Your Honor found that the

11    testimony by the defendant regarding his understanding of

12    the proffer agreement was not credible and instead Your

13    Honor --

14         THE COURT:  Why are we getting into all of this?

15    Is this relevant to the obstruction?

16         MR. MICHAEL:  Well, that's the basis for the

17    obstruction is that Your Honor made a finding that the

18    defendant was not credible and instead credited the

19    testimony of AUSA David Fields who took the stand and

20    testified regarding the instruction and exchange he had with

21    the defendant regarding the proffer agreement.

22         In light of that Your Honor, in light of that

23    finding Your Honor made --

24         THE COURT:  Well, David Fields was -- I'm

25    recalling now.  It's been a while; but the question was

```
 1    whether or not the defendant was properly advised of the
 2    consequences of his plea, correct?
 3              MR. MICHAEL:  Correct, Your Honor.
 4              THE COURT:  And he had a lawyer who I think
 5    admitted that he hadn't told him what the consequences were
 6    in terms of his being potentially a career offender; is that
 7    right.
 8              MR. MICHAEL:  With regard to career offender,
 9    that's correct, Your Honor.
10              THE COURT:  And, in fact, I seem to recall that
11    lawyer testifying in a hearing.
12              MR. MICHAEL:  Correct, Your Honor.
13              THE COURT:  And I'm not sure, but I think I felt
14    compelled to accept his position.
15              MR. MICHAEL:  You did, Your Honor.
16              THE COURT:  Even though it caused me some doubt,
17    because the lawyer was an experienced criminal defense
18    lawyer albeit on the state side -- I don't remember his name
19    but I remember he was a tall fellow.
20              MR. MICHAEL:  Frank DiGiacomo, Your Honor.
21              THE COURT:  Yes.  And he had represented people in
22    the federal court, and I just found it incredible for a
23    defense lawyer of substantial experience not to advise his
24    client of that Draconian consequence.
25              But in any event, I felt that the consequences
```

1  were so great that I reluctantly accepted his testimony.

2          MR. MICHAEL:   Correct.   And what Your Honor

3  ultimately ruled was that Mr. Bridgeforth could withdraw

4  from his prior plea agreement --

5          THE COURT:   Yes.

6          MR. MICHAEL:   -- withdraw his guilty plea and

7  proceed to trial.

8          At that point, the parties and the court believed

9  that he was a career offender; and so a decision was made by

10  Mr. Bridgeforth with his new counsel, Angela Parrott, who

11  was appointed from the Federal Public Defender's Office, to

12  proceed to trial.

13          THE COURT:   And it did proceed to trial.

14          MR. MICHAEL:   But prior to trial, Your Honor, the

15  government put defendant on notice that it was going to

16  introduce statements he made during a proffer session

17  pursuant to a proffer agreement if he testified or presented

18  a contrary defense.

19          There was objection to that and then a hearing was

20  held as to whether or not Mr. Bridgeforth understood when he

21  made that statement in a proffer session that his

22  statements, under limited circumstances, could in fact be

23  used against him in the manner in which the government was

24  putting him on notice that it would seek to do during the

25  trial.

```
 1            Your Honor had a hearing on the matter.
 2   Mr. Bridgeforth testified with counsel Miss Parrott.
 3            THE COURT:  At the hearing.
 4            MR. MICHAEL:  At the hearing, pretrial hearing.
 5            Mr. Fields took the stand, which is somewhat
 6   unusual but the AUSA took the stand and advised Your Honor.
 7            THE COURT:  I recall he had already left the
 8   office.
 9            MR. MICHAEL:  That's my understanding.
10   Miss Kardon was on the case at that time; and, Your Honor,
11   rather than having me do a poor job of restating the history
12   which I started with when I opened this --
13            THE COURT:  Yes.
14            MR. MICHAEL:  -- I'll direct your attention to the
15   new presentence report in this case, the one that came out
16   in January of 2008 on page 5, paragraphs 30 and 33.
17            THE COURT:  Page 5.  Let me read that just one
18   moment.
19                  (Pause in the proceedings.)
20            THE COURT:  Now, did the -- was DiGiacomo the
21   lawyer at this point or was it Parrott?
22            MR. MICHAEL:  It was Parrott, Your Honor.
23            THE COURT:  And what did she say?
24            MR. MICHAEL:  She had not been present during the
25   proffers.
```

1          THE COURT:  Oh.

2          MR. MICHAEL:  But she was the lawyer who put

3     Mr. Bridgeforth on the stand leading to the testimony that

4     Your Honor found not credible.

5          And what I would also just secondarily point you

6     to is in the government's sentencing position that was filed

7     on March 6th, the government attached sentencing papers

8     filed by Miss Kardon since she was the prosecutor at the

9     time when this issue of object instruction was litigated

10    before Your Honor prior to Mr. Bridgeforth's previous

11    sentencing.

12         Your Honor never made a finding that obstruction

13    applied because at the time you deemed him a career offender

14    which was the government's position as well.  So it was

15    irrelevant; there was no need to make that finding.

16         THE COURT:  Now, again, refresh my memory.  Did he

17    testify at the trial?

18         MR. MICHAEL:  I don't believe he testified at

19    trial, Your Honor; and I believe that Your Honor made a

20    ruling that the government could use his proffer statements

21    if he presented an inconsistent defense.

22         THE COURT:  So it was an effort at obstructing

23    justice.  In other words, he obstructed justice in the sense

24    that I found he was untruthful.

25         MR. MICHAEL:  Correct.

```
 1              THE COURT:  But ultimately, he never testified so
 2    the scenario never came into play.
 3              MR. MICHAEL:  The government received the benefit
 4    of the proffer agreement it had struck with Mr. Bridgeforth,
 5    an ability to least put the defendant on notice.
 6              THE COURT:  Let me ask you another question.
 7              MR. MICHAEL:  Sure, Your Honor.
 8              THE COURT:  In terms of the agreement that you've
 9    reached with the defendant and his counsel, Mr. Kielty, it
10    says that the court is required to follow that agreement or
11    not?
12              MR. MICHAEL:  No.  There's no basis for either
13    party to bind Your Honor's hands like we could with a
14    11C1(c) plea agreement.  Essentially, the agreement is
15    really an effort by the parties to craft, quite frankly, a
16    novel way to convey to the court our joint agreement here.
17              THE COURT:  In other words, I'm not bound by it?
18              MR. MICHAEL:  Correct, Your Honor.
19              THE COURT:  So given the world as it is now and
20    realizing the limitations the court has under Section 3553,
21    in other words, the court can't randomly or arbitrarily
22    sentence him.  It has to take into account 3553 factors.  I
23    could sentence him to the statutory maximum.
24              MR. MICHAEL:  Absolutely, Your Honor.
25              THE COURT:  And what is the statutory maximum?
```

1          MR. MICHAEL:  The statutory maximum for his

2     offense would be life, Your Honor.

3          THE COURT:  And the conviction was appealed,

4     correct?

5          MR. MICHAEL:  And it was upheld, Your Honor.

6          THE COURT:  But the sentencing part was reversed.

7          MR. MICHAEL:  That's the only basis for remand.

8          THE COURT:  And --

9               *(Pause in the proceedings.)*

10          MR. MICHAEL:  Your Honor, may I address the court?

11          THE COURT:  Frankly, I'm, in light of where we are

12     right now, the obstruction issue doesn't seem to me as -- in

13     other words, if the parties haven't agreed to a binding

14     sentence -- and they can -- at this point it's not a plea

15     agreement; it's just a resentencing.

16          MR. MICHAEL:  Correct, Your Honor.

17          THE COURT:  In other words, this is not a plea

18     agreement.

19          MR. MICHAEL:  Correct.

20          THE COURT:  We went to trial.  He was convicted.

21     The conviction was affirmed.  The sentence, insofar as it

22     constituted a life sentence, right?

23          MR. MICHAEL:  Well, 360 months.

24          THE COURT:  A career offender sentence was

25     reversed.

```
 1              MR. MICHAEL:  Correct.

 2              THE COURT:  So we're here for resentencing.  So

 3      the court could resentence him to life.

 4              MR. MICHAEL:  Correct, Your Honor.  If I may.

 5              THE COURT:  Yes.

 6              MR. MICHAEL:  The reason why the government

 7      entered into, quite frankly, what I would characterize as an

 8      extraordinary sentencing agreement is because there are

 9      extraordinary circumstances in this case.

10              THE COURT:  Let me hear it.

11              MR. MICHAEL:  Defendant signed a plea agreement

12      and was prepared to accept responsibility and the low end of

13      the sentence under the guidelines which were then binding on

14      Your Honor would have been 155 months.

15              Former AUSA David Fields had conveyed both to

16      Miss Kardon, as well as to defense counsel and perhaps even

17      to court, that he anticipated that Your Honor would sentence

18      the defendant to 155 months which is what Mr. Fields was

19      going to ask for.

20              Mr. Bridgeforth was then, after he entered his

21      guilty plea, found to be a career offender by probation; and

22      that's when the litigation came up as to whether or not

23      Mr. DiGiacomo had properly advised him that he could, in

24      fact, instead of the 155, he really would be facing a

25      360-month sentence.
```

1    Your Honor found he was not properly advised after

2  Mr. DiGiacomo took the stand and said:  I did not properly

3  advise him; and you allowed the defendant to back out of his

4  plea deal.  Then --

5    THE COURT:  Well, it's the Ninth Circuit opinion

6  supporting the fact of Mr. DiGiacomo not advising him.

7    MR. MICHAEL:  Well, what the Ninth Circuit opinion

8  found, Your Honor, is that Mr. Bridgeforth should never have

9  been found a career offender.

10    And, in fact, the probation department, prior to

11  sentencing, a supervisor reviewed the finding that he was a

12  career offender and said:  You know what?  We screwed up.

13  He should not be a career offender.  It's a wobbler and we

14  don't think it is.  So the career offender finding which

15  caused him to seek to withdraw his plea agreement was in

16  error.

17    Government counsel at the time, Miss Kardon, took

18  the position --

19    THE COURT:  Wobbler meaning that he was charged

20  with a felony but the disposition was not more than 12

21  months in jail.

22    MR. MICHAEL:  Exactly.

23    THE COURT:  Under the state criminal law, that's

24  considered a wobbler.  In other words, it has some of the

25  indicia of a felony but ultimately the sentence is

1    characterized more as a misdemeanor.

2            MR. MICHAEL:  Correct.  And the government took

3    the position at sentencing that it doesn't matter what the

4    actual sentence was, that he could have been sentenced to

5    felony-length sentence.

6            THE COURT:  I always thought that was the law.  I

7    guess it isn't the law.

8            MR. MICHAEL:  What happened was, Your Honor, the

9    government thought it was the law and Your Honor concurred

10   and sentenced him to 360 months.

11           THE COURT:  Yes.

12           MR. MICHAEL:  The Ninth Circuit has since ruled,

13   specifically in this case, that that wobbler, in light of

14   the sentence that he got being less than a year and, in

15   fact, defense counsel at the time who replaced

16   Mr. DiGiacomo, Miss Parrott, actually went to the state

17   court and got the court to issue an explicit finding that it

18   was, in fact, a misdemeanor and not a felony.

19           The Ninth Circuit held that that doesn't qualify

20   for career offender status; he should never have been found

21   to be a career offender; and that's why the case was sent

22   back here.

23           THE COURT:  Was that a new opposition of law or

24   what?

25           MR. MICHAEL:  It was a published opinion by the

1    Ninth Circuit.

2              THE COURT:  I know it was.  But I mean, I always

3    thought -- this is actually beside the point but I'm

4    curious -- that in many instances the guidelines refer to

5    the potential of the crime, not the actual disposition of a

6    crime.

7              MR. MICHAEL:  Candidly, Your Honor, before this

8    case was reassigned to me, that was my view as well; and I

9    believe that was the view of prior counsel, Miss Kardon.  I

10   think that view ultimately was found by the Ninth Circuit to

11   not be wholly accurate.

12             I have to confess, I haven't read the opinion

13   recently; I have read it before.

14             THE COURT:  It doesn't make a difference now

15   because whatever it was, it is the law and has to be

16   followed.

17             MR. MICHAEL:  Correct.

18             THE COURT:  But -- so I think I hear what you're

19   saying.  You're saying that but for this confusion about the

20   career criminal offender issue, both as to whether his

21   criminal history warranted that status and whether DiGiacomo

22   should have alerted him to it, even if it wasn't certainly

23   at that point it wasn't as explicit a case on file, he would

24   have agreed to a disposition of 155 months.

25             MR. MICHAEL:  Correct.  As would the government,

```
 1   Your Honor.

 2          THE COURT:  And so the government feels that in

 3   light of the litigation that followed, he would be unfairly

 4   penalize with a higher sentence.

 5          MR. MICHAEL:  Correct.

 6          THE COURT:  And I agree with that.  It sounds to

 7   be a reasonable and, frankly, a high-minded view of the

 8   government.  I have no fault with that.

 9          The question is, leaving aside this obstruction.

10   Why should he get a lesser sentence now than the one that

11   was agreed to back then?

12          MR. MICHAEL:  The government believes he should

13   get the same sentence with one caveat.  The crack guidelines

14   have changed so he does get the benefit of a two-point

15   reduction that now applies for crack cocaine in the most

16   current guidelines so he gets that benefit.

17          THE COURT:  I see.

18          MR. MICHAEL:  So as it turns out, with Your Honor

19   making a finding as the government suggests of plus two for

20   obstruction and the base offense level based on the current

21   guidelines as they apply to crack, the low end again would

22   be 155 months.

23          THE COURT:  Why would I have to -- what would be

24   the sentence without the obstruction if I didn't sentence

25   him to the low end?
```

```
 1          MR. MICHAEL:  If you didn't sentence him to the
 2  low end, in light of the statutory maximum, Your Honor, can
 3  sentence him to whatever up to life.
 4          But the government's position is that he should
 5  receive the same sentence that he would have received had he
 6  never sought to walk away from his plea agreement because of
 7  the confusion.
 8          THE COURT:  But under the guidelines --
 9          MR. MICHAEL:  The range, Your Honor --
10          THE COURT:  Yeah.
11          MR. MICHAEL:  Defense counsel is reminding me.  I
12  keep misstating that it's 155 and I apologize.  It's 151.
13          The range, Your Honor, that he would be facing,
14  Criminal History VI, if Your Honor found that there was
15  obstruction, of 151 to 188.
16          THE COURT:  Right.
17          MR. MICHAEL:  If Your Honor did not make the
18  finding that there was obstruction at Criminal History VI
19  and offense level of 27, which is what is advocated by
20  defense counsel, his range 130 to 162.  So, in fact, Your
21  Honor, the 151 still falls within the range.
22          THE COURT:  I understand you.  Let me hear from
23  the defendant and/or his counsel.
24          MR. MICHAEL:  Your Honor, just one last point for
25  the record.  Miss Parrott has also advised the government, I
```

1    believe in a sworn affidavit, that she would admit that she

2    was ineffective as well in advising Mr. Bridgeforth to

3    proceed to trial without fleshing out this career offender

4    issue.  So that's another level that compounded the

5    confusion.

6         THE COURT:  I agree with both sides that given the

7    confused history of the case and the fact that otherwise the

8    defendant would have reached a disposition more favorably,

9    that there should be a resentencing that takes that into

10   account.

11        MR. MICHAEL:  And I take it, Your Honor, that your

12   you founding was earlier you would grant the government's

13   motion to dismiss the prior felony Information?

14        THE COURT:  Yes.

15        So, Mr. Kielty, how do you see it?

16        MR. KIELTY:  Well, Your Honor, I have to confess I

17   don't have a lot to say to you because I'm in agreement with

18   most of what the government says.

19        THE COURT:  Well, it works a tremendous benefit to

20   your client.  The path to this sentencing, or resentencing,

21   is fairly torturous.  But whatever it is, he was someone who

22   was essentially looking at spending the rest of his life in

23   jail and now there's a proverbial, you know, window at the

24   end of the tunnel.

25        MR. KIELTY:  Correct, Your Honor.

```
 1              THE COURT:  I mean, either way, he's not getting
 2    out tomorrow but certainly his horizon is a lot different.
 3              MR. KIELTY:  Correct.  So everything that
 4    Mr. Michael said, except for the comments about obstruction,
 5    the defense agrees with.  Ultimately, probation made a
 6    mistake.  I wanted to comment briefly --
 7              THE COURT:  Let me add on the obstruction thing.
 8    I'm not going to find there was obstruction so you need not
 9    argue that.
10              MR. KIELTY:  Then I would submit it, Your Honor.
11    That's the only thing that I argued in my paper.
12              THE COURT:  I see.
13              Does the defendant wish to be heard?  He doesn't
14    have to but if he wants to, I'm receptive.  Do you wish to
15    be heard?
16              MR. KIELTY:  Yes, Your Honor.
17              THE DEFENDANT:  Yes.
18              THE COURT:  Take the lectern.
19              THE DEFENDANT:  Good morning.  I really planned on
20    taking this time to apologize to my family and my friends
21    and everybody for my selfish ways that got us all involved
22    here.  But I don't see them here today so I would like to
23    express it to the court that I sincerely take responsibility
24    for everything I did concerning this whole case.
25              As far as the actual drug transactions and
```

1  everything, I take all responsibility for the things I did;

2  and I ask the court please take into consideration I'm doing

3  everything I can to change my ways.

4          I should say I have gone to classes offered to me

5  in prison.  I did anything and everything that was asked of

6  me in accordance with the prison rules that I was allowed to

7  take.  A lot of classes I couldn't take because I wasn't

8  allowed to because of the time.

9          So I would ask the court to at least take that

10  into consideration and give me the lowest sentence possible

11  according to the sentencing agreement that I made with

12  Mr. Brian Michael here.

13          Thank you.

14          THE COURT:  All right.  Any legal cause why

15  sentence should not now be imposed?

16          MR. KIELTY:  I apologize, Your Honor.

17          THE COURT:  Yes.

18          MR. KIELTY:  A brief addendum.  I just wanted to

19  make the court aware -- and I'm sure you already are -- but

20  I filed a two-page letter --

21          THE COURT:  Yes.

22          MR. KIELTY:  -- that lists all of those

23  activities.  It doesn't actually -- I wanted to keep it

24  simple and I didn't want to inundate the court.  In light of

25  the sentencing agreement, it's not really germane except to

 1   the comments that Mr. Bridgeforth just made.

 2            That letter has a list of all of the certificates

 3   that Mr. Bridgeforth received and all the commendations that

 4   he received while he was doing his time at BOP.

 5            It's a letter from Yasmin Cader addressed to Brian

 6   Michael.  I think it's dated September 21st, 2007.

 7            THE COURT:  Any legal cause why sentence should

 8   not now be imposed?

 9            MR. MICHAEL:  Not legal cause, but just one

10   housekeeping matter.

11            THE COURT:  Yes.

12            MR. MICHAEL:  Defendant and his counsel agreed to

13   the sentencing agreement that they would also seek to

14   withdraw a motion that was filed.  I just want to make sure

15   that that motion is, in fact, withdrawn before we proceed to

16   sentencing, Your Honor.

17            THE COURT:  Is that withdrawn?

18            MR. KIELTY:  It is withdrawn, Your Honor.

19            THE COURT:  All right.

20            Pursuant to the Sentencing Reform Act of 1984, it

21   is the judgment of the court that the defendant Ozine

22   Bridgeforth is hereby committed on Counts 1, 2, and 3 of the

23   Indictment to the custody of the Bureau of Prisons to be

24   imprisoned for a term of 155 months.

25            This term consists of 155 months on each of Counts

1, 2, and 3 of the Indictment to be served concurrently.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of ten years under the following terms and conditions:

This term consists of ten years in each of Counts 1, 2, and 3.  All such terms to run concurrently.

1.  He shall comply with the rules and regulations of the U.S. Probation Office and General Order 318.

2.  He shall refrain from any unlawful use of a controlled substance and submit to drug and alcohol testing not to exceed eight tests per month.

He shall participate in outpatient substance abuse treatment and counseling programs as directed by the probation officer.

He shall not associate with anyone known to him to be a Mob Piru Blood gang member or persons associated with the Mob Piru Blood gang with the exception of his family members.

He may not go anywhere, display, use, or possess any Mob Piru Blood gang insignias, emblems, badges, buttons, hats, caps, jackets, shoes, or any of the clothing which evidences affiliation with the Mob Piru Blood gang and may not knowingly display any Mob Piru Blood signs or gestures.

He shall not be present in an area known to him to be a location where members of the Mob Piru Blood gang meet.

1                 He's ordered to pay a special assessment of $300.

2                 All fines are waived.

3                 The court is adopting the agreement of the parties

4    that the defendant is a level VI, has a Criminal History

5    Level of VI and that the offense level is 27.

6                 Given that range, the sentence of 155 months --

7    yes, sir.

8                 MR. MICHAEL:  Your Honor, I created confusion.  It

9    should be 151 and I think Your Honor had concurred.

10                THE COURT:  151 months.

11                MR. KIELTY:  Your Honor, 151 is the low end of

12   level 29.  The low end of level 27 is 130.

13                THE COURT:  Right.  But I'm not following that.

14   That's the point.

15                MR. KIELTY:  Okay.

16                THE COURT:  So I'm sentencing to 151 months.  I

17   could make it 155 but I'll make it 151; and the

18   justification for the sentence is that, first, this was what

19   he agreed to at the outset of the case, not that that is

20   determinative; but considering the factors under 3553(a) and

21   given the seriousness of the underlying allegation, this is

22   a correct sentence.

23                The defendant has benefitted by the ensuing change

24   in drug guidelines dealing with the crack cocaine and,

25   frankly, Mr. Bridgeforth, while my memory is not crystal

1   clear, you seem to be a somewhat redeemed man.  In other

2   words, my memory of you is that you're a little softer than

3   you were back then.

4          THE DEFENDANT:  Yes, definitely.

5          THE COURT:  Hopefully, my perception is right.

6          THE DEFENDANT:  Yeah.

7          THE COURT:  But, you know, you had a tough start

8   in life.  I empathize with that.  You know, it's easy for me

9   to say having been born with a lot more privilege than you.

10  You had a tough start, maybe tougher than I can even

11  appreciate.  But you did some bad things.  You know, you're

12  a tough guy.  You wielded guns, put people at risk and you

13  know what you did.

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And, you know, there is a price to

16  pay.  I mean, it seems to me you're making every effort now

17  to realize that life is short and you've wasted a lot of

18  years.

19         THE DEFENDANT:  Yes.

20         THE COURT:  How old are you?

21         THE DEFENDANT:  37.

22         THE COURT:  All right.  But, you know, there will

23  be a lot of life ahead of you when you get out.

24         THE DEFENDANT:  Uh-huh.

25         THE COURT:  And it seems to me -- and I don't

1    want, you know, to speak from the pulpit here.  You have a

2    minister to do that.  But let me just take a quick

3    opportunity to tell you that you're doing a lot of positive

4    things.  You're taking courses --

5                THE DEFENDANT:  Yes.

6                THE COURT:  -- and you got your GED, and I know

7    there are a lot of bad influences in prison.

8                THE DEFENDANT:  Yes.

9                THE COURT:  And maybe you are resisting those.

10               THE DEFENDANT:  Yes.

11               THE COURT:  But all I can tell you is that you

12   earned the sentence and you've got a break because the world

13   has changed somewhat; and, on the other hand, you perhaps

14   suffered because maybe had this thing gone down as you

15   wanted it to, initially, it would have been easier for you.

16               In other words, there may have been a lot of

17   torment mentally about how it came out or not.

18               So I have a lot of things to balance when I

19   sentence you; and but I did want you to know that I

20   recognize at least it seems to me that you're making a

21   strong effort to redeem yourself.

22               THE DEFENDANT:  Thank you.

23               THE COURT:  And people waste their lives at

24   different points.  Some people live great lives up to age

25   48.  Look at the governor of New York.

```
 1              THE DEFENDANT:  Yeah.

 2              THE COURT:  And then they slide.  You slid early.

 3    Maybe now you're on the uprise.  So keep it up.

 4              THE DEFENDANT:  Okay.

 5              THE COURT:  Keep your eye on the ball.  Don't fall

 6    into the trap of those gangs that did you a lot of harm.

 7    Good luck.

 8              THE DEFENDANT:  Thank you.

 9              MR. KIELTY:  Thank you, Your Honor.

10              MR. MICHAEL:  And, Your Honor, briefly.  Defendant

11    has waived his right of appeal in the sentencing?

12              THE COURT:  Yes.

13         Do you want to make a motion to dismiss that?

14              MR. MICHAEL:  I'll file a motion and proposed

15    order, Your Honor.

16              THE CLERK:  All rise.

17              (At 1:45 p.m. proceedings were concluded.)

18

19                          -oOo-

20

21

22

23

24

25
```

1                         CERTIFICATE

2

3            I hereby certify that pursuant to Section 753,

4     Title 28, United States Code, the foregoing is a true and

5     correct transcript of the stenographically reported

6     proceedings held in the above-entitled matter and that the

7     transcript page format is in conformance with the

8     regulations of the Judicial Conference of the United States.

9
      Date:  December 19, 2008
10

11

12                              _____

13                              PAT CUNEO, OFFICIAL REPORTER
                                CSR NO. 1600
14

15

16

17

18

19

20

21

22

23

24

25